UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**ANTHONY DALE KELLEY**                                                                                                  **PLAINTIFF**

**v.**                                                                              **CIVIL ACTION NO. 3:21CV-P234-CRS**

**AMY ROBEY** *et al.*                                                                                            **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants Amy Robey, Jordan Wright, Sarah Crawford, Lindsay Melton, and Kyle Sellers (hereinafter "Defendants") (DN 20). Proceeding *pro se*, Plaintiff Anthony Dale Kelley filed a response to the motion (DN 30), and Defendants did not file a reply. This matter being ripe for review, for the following reasons, the motion for summary judgment will be denied without prejudice to Defendants refiling their motion and attaching properly authenticated records and the Kentucky Department of Corrections (KDOC) grievance policies and procedures in effect at the time of the alleged events.

**I**.

Plaintiff is currently housed at the Kentucky State Penitentiary (KSP), but the complaint stems from his previous incarceration at the Luther Luckett Correctional Complex (LLCC). Plaintiff initiated this 42 U.S.C. § 1983 action by filing a handwritten complaint (DN 1). He later filed an amended complaint on the Court's approved § 1983 form (DN 7). The Court conducted an initial review of the complaint and amended complaint pursuant to 28 U.S.C. § 1915A, dismissed some claims, and allowed Plaintiff's Eighth and Fourteenth Amendment claims to continue against Defendants Robey, the LLCC Warden; Wright and Crawford, whom Plaintiff identified as LLCC Unit Administrators; and Melton and Sellers, whom he identified as

LLCC Captains (DN 12). The claims proceeded against these Defendants in their individual capacities.

## A.

In the complaint and amended complaint, Plaintiff alleged that he was put in a Restrictive Housing Unit (RHU) on February 11, 2021, after he "was robbed, threatened of life and extorted" in LLCC's general population.[1] He stated that he was housed in RHU "under protective custody, awaiting a transfer to long-term protective custody of Kentucky state prison." Plaintiff alleged that during the time that he was housed in RHU he "was given a suicide smock, suicide blanket or 'security blanket,' and made to eat with a paper spoon and rubber tray, and given a pair of paper underwear." He also stated that he was "made to brush teeth with a shankproof toothbrush" which required him "to put his hand in his mouth which is unsanitary." He asserted, "At no point of the plaintiffs segregation placement nor during his administrative placement in (RHU) has the plaintiff informed staff of wanting to harm himself or someone else therefore making him homicidal or suicidal" which "could account for the plaintiff being placed in a suicide smock, suicide blanket, paper boxers" and made to use the other items. Plaintiff asserted, "When doing this to a sane, competent person whom has not informed staff or mental health of wanting to harm themselves or others therfore threating them as a homicidal or suicidal person, this would be deemed as being deprived of ones Eighth Amendment rights concerning 'Cruel and Unusual Punishment.'" (Emphasis omitted). Plaintiff also alleged that this caused his extreme emotional distress and mental anguish.

Moreover, Plaintiff also alleged that Defendants violated the Fourteenth Amendment's Due Process Clause by "subjecting and enforcing the plaintiff to endure living in the mind, body

---

[1] The complaint and amended complaint make substantially the same allegations, but the amended complaint is written on the Court-approved form and signed under penalty of perjury. The Court will quote from the amended complaint herein.

and soul in the same way as that of one's who's mind, body and soul are subjected to severe depression, hopelessness, feeling of failure, . . . such as the mindset of one who is homicidal or suicidal." As relief, Plaintiff sought compensatory and punitive damages.

### B.

In their motion for summary judgment (DN 20), Defendants assert that Plaintiff was placed in RHU from February 11, 2021, through April 29, 2021, when he was transferred to a protective custody (PC) unit in KSP. They state, "Of central relevance to Plaintiff's remaining claims is the fact that LLCC does not have a dedicated PC unit, only RHU."[2] They further assert the following:

> Any inmate requiring PC must be held in administrative segregation in LLCC's RHU pending: 1) investigation of the PC request; 2) an institutional Classification Committee hearing and recommendation; 3) approval by the Central Office Classification Committee ("COCC"); and, if PC is approved, 4) transfer to another KDOC facility that provides PC status.

Defendants state, "Because LLCC does not have a dedicated PC unit, Plaintiff remained on administrative segregation status while in the LLCC RHU awaiting a PC placement." They add, "Also of crucial relevance to Plaintiff's claims, LLCC was on lockdown due to COVID restrictions from January 5, 2021, through February 20, 2021, and KSP was on COVID lockdown from March 1, 2021, through April 25, 2021."

Defendants do not dispute that Plaintiff requested PC "as a result of being the alleged victim of extortion by several other inmates in general population." They state that he was "was immediately placed in administrative segregation in the RHU for his safety and the safety of the institution." Defendants report that Plaintiff's request for PC was investigated and reviewed under KDOC policies and procedures and that Plaintiff was ultimately approved for transfer to a

---

[2] This statement. as well as other factual assertions in the motion, are not supported by an affidavit or other evidence.

PC unit at KSP on March 12, 2021. Defendants state that Defendant Crawford submitted a transfer request on Plaintiff's behalf on that same date and that Plaintiff's "Conflict Notification" Form was approved by a deputy warden on March 16, 2021." They report that "KSP, however, was unable to accept transfers at that time as it was on COVID lockdown. KSP's yard was re-opened from COVID lockdown on April 25, 2021, and Plaintiff was transferred to KSP as soon as practicable on April 29, 2021."

Defendants further state that Plaintiff's conditions of confinement while in RHU were dictated by Corrections Policies and Procedures (CPP) 10.2 and the LLCC "RHU/RHU Annex Inmate Handbook." They assert that under CPP 10.2(II)(B)(11)(b)(2) and the RHU/RHU Annex Inmate Handbook, "Plaintiff was provided with the uniform designated by the warden, which in LLCC RHU is a security smock used to ensure the safety and security of the inmates and the institution." They also state that Plaintiff was provided with bedding dictated by LLCC policy as stated in the RHU/RHU Annex Inmate Handbook. They maintain that he was provided the same meal service as the general population, but with paper and rubber utensils to ensure security within the RHU in accordance with CPP 10.2(II)(A)(7).

Defendants assert that Plaintiff attempted to grieve his complaints regarding his clothing and bedding on March 10, 2021, but did not complete the grievance procedure. They report that Grievance No. 21-099 "was determined to be non-grievable because it was identical to one that was made through the Commissioner's level within the past six months." They assert that CPP 14.6(II)(E)(2) also dictates that, if the grievant under these circumstances is not satisfied with the previous decision, he has three business days to appeal directly to the Commissioner. They state that Plaintiff did not do this; therefore, he did not completely exhaust available remedies.

Defendants also state that "Plaintiff attempted to grieve his 'accommodations' on April 16, 2021, but failed to address his complaint within the proper appeals procedure." They state that Grievance No. 21-195 "was determined to be non-grievable because Plaintiff was attempting to appeal a Classification Committee decision when the proper procedure is to appeal that committee action, not file a grievance." They maintain, "At no stage did Plaintiff appeal any Classification Committee decision."

Defendants argue that they are entitled to summary judgment on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a)[3]; (2) Plaintiff's Eighth Amendment claims must be dismissed because he has not alleged a physical injury as required by 42 U.S.C. § 1997e(e); (3) they are entitled to qualified immunity as to Plaintiff's Eighth Amendment claims; (4) Plaintiff's Eighth Amendment claims fail to satisfy either the objective or subjective components of the required analysis; and (5) Plaintiff's Fourteenth Amendment claims fail because he has no constitutionally-protected liberty interest and that, even if he did have such an interest, he received all that the Due Process Clause requires.

After the time had passed for Plaintiff to file a response to the motion and he had failed to do so, the Court entered an Order (DN 28) giving Plaintiff another opportunity to respond to the motion for summary judgment and providing him general guidance in responding to a motion for summary judgment under Fed. R. Civ. P. 56 consistent with *United States v. Ninety-Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003) (holding that a *pro se* prisoner litigant is "entitled to notice of the consequences of a summary judgment motion and the requirements of the summary judgment rule").

---

[3] Defendants also argue that Plaintiff failed to exhaust his administrative remedies under Ky. Rev. Stat. § 454.415. However, that statute does not govern Plaintiff's claims in this action brought under § 1983.

Plaintiff then filed a response to the motion (DN 30).[4]  Plaintiff reiterates the facts of his complaint and amended complaint and makes additional factual allegations.  He states that it was so cold in RHU that there was "ice frozen on the ceiling and walls, dripping onto the bed and floor where he slept and the suicide smock or blanket did nothing to warm him."  Plaintiff maintains that he asked "Mental Health" for help and that the psychologist informed him that he or she did not agree with all inmates living in suicide attire "but that Warden Amy Robey wanted it that way and they could not override her decisions."  He also states that the CPP "says that if an inmate doesn't show signs of being suicidal that he is to be removed from the suicide attire" but that he was not.  He further asserts that the CPP also states that the shift captain "must file paperwork as to why the inmate is not removed from suicide watch within 72 hours."

Plaintiff further asserts that while he was housed in RHU Defendants Robey, Wright, and Melton asked him if he would be willing to help with a maintenance project and that he agreed to do so.  He states that he was given "multiple sharp and dangerous tools in order to perform job duties[]" and that he was "left alone for hours without supervision of staff or a camera to watch him[.]"  Plaintiff argues that if Defendants had truly thought he was suicidal they would not have allowed him to use these tools.  He also maintains that Defendant Robey "has complete control over [LLCC]" and "can change any institutional policy or rule that she wants to at any given time."  He states that she knew he was not suicidal and "forced [him] to live under suicide watch without any real justification causing the Plaintiff severe mental anguish."

Plaintiff does not address Defendants' arguments regarding exhaustion, and he attaches no exhibits to his response.

---

[4] Plaintiff signed the response stating that he "swear[s] that all the facts listed herein are true and accurate to the best of my knowledge."  However, because he did not sign the response "under penalty of perjury," the response does not carry the same weight as an affidavit.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).  Therefore, the response's factual allegations cannot be considered as evidence at the summary judgment stage.

## II.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a

genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III.

Defendants first argue that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies before filing suit. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under . . . [§ 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e(a), has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies is an affirmative defense, *id.* at 216, which the defendant has the burden to plead and prove by a preponderance of the evidence.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. at 532. The PLRA's exhaustion requirement "give[s] prison officials a fair opportunity to address a prisoner's claims on the merits before federal litigation is commenced." *Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017). To exhaust a claim, a prisoner must proceed through all steps of a prison's grievance process because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The

Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules," given that "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91. However, an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 642 (2016).

Defendants attach grievance records related to grievances ostensibly filed by Plaintiff, including a grievance log. (DN 20-11, PageID.221-24; DN 20-12, PageID.225-28; DN 20-14, PageID.256-57).[5] However, Defendants did not attach the affidavit of any LLCC personnel or otherwise authenticate any of the grievance records. They also attach unauthenticated KDOC grievance policies and procedures, CPP 14.6, to their motion. (DN 20-13, PageID.229-55). The policies and procedures state in their heading that they became effective on July 20, 2021, and the events alleged in the complaint occurred from February 11, 2021, through April 29, 2021. The grievance procedures attached to the motion, therefore, are not applicable to Plaintiff's claims.

"The failure to authenticate a document properly precludes its consideration on a motion for summary judgment." *Robinson v. Bodoff*, 355 F. Supp. 2d 578, 582 (D. Mass. 2005) (striking all exhibits that were submitted without affidavits and were not self-authenticating). Unauthenticated exhibits are not proper evidence for opposing or supporting a summary judgment motion." *Steele v. Jennings*, No. 2:04-CV-189, 2005 U.S. Dist. LEXIS 18703, 2005 WL 2124152, at *3 (S.D. Ohio Aug. 31, 2005). Because the attachments to the summary-

---

[5] The Court notes that the grievance records do not contain the denial of Plaintiff's grievance appeal of Grievance No. 21-099. Defendants cite only a grievance log as showing the reason that the appeal was denied.

judgment motion are not authenticated, they are not appropriate evidence at summary judgment, and Defendants have not properly supported their summary-judgment motion. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (noting that prison medical records and other documents attached to summary-judgment motion which were not certified to be authentic did not satisfy Fed. R. Civ. P. 56's requirements). In order for the Court to consider the records attached to Defendants' motion, Defendants must file properly authenticated records.

Therefore, the Court will deny the motion for summary judgment without prejudice to Defendants refiling their motion attaching properly authenticated records, as well as the version of the inmate grievance policies and procedures in effect at the time of the events alleged in this action. Because the motion may be granted based on the exhaustion issue, the Court will defer addressing Defendants' other arguments in support of summary judgment at this time.

**IV.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 20) is **DENIED without prejudice** to Defendants refiling their motion and attaching authenticated records in support of their motion and the grievance policies and procedures which were in effect at the time of the events alleged in the complaint and amended complaint.

Date:   March 3, 2022

Charles R. Simpson III, Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Counsel of record
4411.010